VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.    26-AP-087



*Note: In the case title, an asterisk (*) indicates an appellant and a double asterisk (**) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JULY TERM,   2026

| | |
|---|---|
| Patrick McElroy v. Mandi Theberge* | APPEALED FROM: |
| | Superior Court, Caledonia Unit, |
| | Family Division |
| | CASE NO. 104-9-20 Cadm |
| | Trial Judge: Bonnie J. Badgewick |

In the above-entitled cause, the Clerk will enter:

Mother appeals from the family division's clarification of the parties' final parent-child-contact order. We affirm.

The parties share a son, B.M., born in June 2020. In June 2022, the family division issued a final parentage order awarding mother sole legal and physical parental rights and responsibilities. The order also included a schedule and provisions for father's parent-child contact. As relevant here, father was to have visits with B.M. on alternating weekends and, when B.M. began school, father was to have three "separate weeks" with B.M. during his summer vacation.

In September 2024, father filed a motion to modify parental rights and responsibilities and parent-child contact. The motion hearing was continued twice—once at the request of each party—and ultimately held in July 2025.

In a written order issued later that month, the court denied father's motion to modify. It explained that while the evidence admitted at the hearing demonstrated that the parties had a difficult time communicating and parenting together, these challenges were not new. The court thus concluded that father had not met his threshold burden to show a "real, substantial, and unanticipated change of circumstances" as necessary to modify the terms of the final order. 15 V.S.A. § 668(a).

The court did, however, address father's request for clarification of the terms of the final order pertaining to visits during B.M.'s summer vacations from school. It observed that while the order did not expressly state whether the three weeks of contact time father was to have during this period fell on father's alternating weekends, the provision that these weeks were "separate" meant that they were in addition to father's normal weekend visitation.

Mother, through counsel, timely moved for reconsideration of the court's order with respect to its clarification of the summer contact schedule. She argued that the provision for three "separate" weeklong visits during this period was properly interpreted to require only that these visits were nonconsecutive, not that they were in addition to father's regular visits. Mother then filed a separate motion requesting that the court hold father in contempt of the terms of the final order pertaining to her FaceTime contact with B.M. during father's visits.

In September 2025, the court issued an order denying mother's motion to reconsider. In declining to revisit its clarification of the terms of the summer contact schedule, the court noted that, at the July 2025 hearing, father presented a graph demonstrating a significant disparity in the amount of time he and mother each had with B.M. It explained that its clarification could lead to a slight amelioration of this disparity. The court concluded, however, that "[t]o the extent either party wishes to be heard on this issue, a request for [a] hearing should be filed, and will be accommodated accordingly."

Mother moved for a hearing. The court scheduled a hearing on the motion to reconsider as well as mother's pending motion to hold father in contempt. Both parties were present at the December 2025 hearing. Mother appeared with counsel and father represented himself.

In February 2026, the court issued a written order denying both of mother's motions. It explained that during the previous summer, after mother had three FaceTime calls with son during father's contact time, father denied mother additional FaceTime calls, believing he was in compliance with the final order. The court held that a fair reading of the orders did not support a finding of contempt. The court also declined to reconsider its clarification of the order's provisions for father's contact during summer vacations. This appeal followed.

On appeal, mother—now self-represented—argues that the trial court erred in clarifying the summer-vacation provisions of the parent-child-contact order and in relying on the graph father presented during the July 2025 hearing in its September 2025 order declining to reconsider that clarification.

Before addressing mother's arguments, we take up father's contention that this appeal is untimely.* To be sure, "[t]he timely filing of a notice of appeal is a jurisdictional requirement." Casella Const., Inc. v. Dep't of Taxes, 2005 VT 18, ¶ 3, 178 Vt. 61. Mother's notice of appeal, however, was timely filed. Vermont Rule of Appellate Procedure 4(a) generally requires that a notice of appeal be filed within thirty days after entry of the judgment or order appealed from. V.R.A.P. 4(a)(1). If a party timely files a motion to reconsider, "the full time for appeal begins to run for all parties from the entry of an order disposing of the . . . motion." V.R.A.P. 4(b)(5). The court issued its order clarifying the summer visit schedule in July 2025, and mother's motion

---

*Father also argues that mother's notice of appeal is defective because, read literally, it indicates that she is appealing from her motions for contempt and for a hearing on her motion to reconsider. This contention has no bearing on our review. While the rules require that a notice of appeal "designate the judgment, order, or part thereof being appealed," they also provide that "[a]n appeal will not be dismissed for informality of form or title of the notice of appeal." V.R.A.P. 3(d)(1)(B), (d)(4). Mother was self-represented in filing her notice of appeal, and it is clear from the language she used that she sought to appeal the trial court's rulings clarifying the final order. See Zorn v. Smith, 2011 VT 10, ¶ 22, 189 Vt. 219 (explaining that although self-represented litigants are bound by ordinary rules of procedure, they nonetheless "receive some leeway from the courts").

to reconsider tolled the appeal period. Though the court first denied reconsideration in September 2025, this was not a final order in that it granted either party the opportunity to request a hearing on the motion. See In re Burlington Bagel Bakery, Inc., 150 Vt. 20, 21 (1988) ("To be final and appealable an order must end litigation on the merits or conclusively determine the rights of the parties, leaving nothing for the court to do but execute the judgment." (quotation omitted)). Mother exercised that opportunity, and the court issued a final decision on the motion to reconsider in its February 2026 order from which mother timely appealed.

The court's clarification of the summer-visit schedule is a decision regarding parent-child contact, which falls "within the discretion of the trial court and will not be reversed unless its discretion was exercised upon unfounded considerations or to an extent clearly unreasonable upon the facts presented." Patnode v. Urette (Patnode I), 2014 VT 46, ¶ 5, 196 Vt. 416 (quotation omitted). We will uphold the court's findings of fact if supported by the evidence, and will affirm its legal conclusions if supported by its findings. Weaver v. Weaver, 2018 VT 38, ¶ 15, 207 Vt. 236.

As noted above, "modification of a . . . parent-child-contact order requires the superior court to undertake a two-part analysis." Patnode v. Urette (Patnode II), 2017 VT 107, ¶ 4, 206 Vt. 212. The court must first consider whether there has been a "real, substantial and unanticipated change of circumstances." 15 V.S.A. § 668(a). Only if this threshold is met may the court move on to determine whether a change to the order would be in the best interests of the child. Id.; Patnode II, 2017 VT 107, ¶ 4. "Yet not all subsequent orders regarding a standing . . . parent-child-contact order are considered modifications—an order may be a clarification that does not require the two-part analysis." Patnode II, 2017 VT 107, ¶ 4. "Where the inherent purpose of an amendment to an existing order is not to change the terms of the original order, but to help the parties meet the original terms, it is well within the court's discretion to view such alterations as clarifying rather than modifying." Patnode I, 2014 VT 46, ¶ 13.

The court's order regarding the summer contact schedule was a clarification. A conflict "ar[ose] from the terms of an order," the trial court was "asked by a party to clarify its intent for how those terms should operate," and it responded with "an addendum which [did] not alter the terms" of the final order. Id. (describing characteristics of order properly characterized as clarification rather than modification). Mother argues that the trial court erred in thus clarifying the terms of the final order and in relying on father's graph in denying her motion to reconsider that clarification.

The latter argument is not preserved. At the July 2025 hearing, mother's attorney indicated that she had no objection to the court considering the graph as a demonstrative exhibit. See Reporter's Notes—V.R.E. 901 (explaining that exhibits may be offered not "for their direct probative force on any matter in issue in the case" but instead "merely to illustrate or clarify a point"). Because mother did not object to the court's consideration of the graph below, she has not preserved this challenge for our review on appeal. See Bull v. Pinkham Eng'g Assocs., 170 Vt. 450, 459 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."); V.R.E. 103(a)(1) (providing that error may not be predicated upon ruling admitting evidence in absence of timely objection).

Mother's remaining contentions do not demonstrate that the court exercised its discretion on unfounded considerations or to an extent clearly unreasonable in clarifying the terms of the summer visit schedule. Patnode I, 2014 VT 46, ¶ 5. The court considered what "separate

3

weeks" meant in the context of the final order.  Id. ¶ 10 (explaining that a clarification "does not change the terms of" parent-child-contact order).  In concluding that the family division clarified—and did not modify—the terms of a parent-child-contact order in Patnode I, we noted that "[i]t bears emphasizing that the superior court did not in any way alter the amount of time that each parent was awarded with the child."  Id. ¶ 12.  The same is true here: although the court noted the likely impact of its clarification on father's overall contact time, it did so only with reference to the intentions underlying the original order.  That order explained that the court did not find father "unable or unfit" to provide care for B.M., and that it was increasing the amount of contact he had under the temporary schedule in order to "foster" a "closer relationship" between father and B.M. going forward.  See 15 V.S.A. § 650 ("The legislature finds and declares as public policy that after parents have separated . . . it is in the best interests of their minor child to have the opportunity for maximum continuing physical and emotional contact with both parents, unless direct physical harm or significant emotional harm to the child or a parent is likely to result from such contact.").  The court's clarification merely carried forward that intent in interpreting a disputed term of the order—it did not modify that term.  As a result, no finding of changed circumstances was necessary.  Patnode I, 2014 VT 46, ¶ 13.

Affirmed.


BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
Michael P. Drescher, Associate Justice